1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  NORTH COUNTY COMMUNICATIONS CORP.,

12                                    Plaintiff,

13       vs.

14

15  CALIFORNIA CATALOG & TECHNOLOGY dba, CCT TELECOMMS (OCN 573B), et al.,

16

17                                    Defendants.

CASE NO. 06CV1542-LAB (RBB)

**ORDER GRANTING MOTIONS TO DISMISS**

[Dkt Nos. 138, 139, 144]

18
19
20
21
22
23
24
25
26
27
28

Plaintiff North County Communications Corp. ("NCC") represents it is a Competitive Local Exchange Carrier ("CLEC") providing telecommunications services throughout California pursuant to the Federal Communications Act of 1934 and the Telecommunications Act of 1996.  Dkt No. 137 ¶ 1, Third Amended Complaint ("TAC").  NCC seeks declaratory relief, quantum meruit recovery, and enforcement of tariff compensation against approximately fifty named defendants it alleges are Commercial Mobile Radio Service ("CMRS") providers or CLECs under those same Acts.  TAC ¶ 2. NCC contends it is entitled to recover its costs to deliver wireless telephone calls initiated by defendants' customers and placed to NCC's customers as traffic sent through NCC's system without any interconnection agreement or reciprocal compensation arrangement.

This matter is before the court on the Motion To Dismiss TAC for failure to state a claim filed by defendants Cal-One Cellular, L.P. and Cellco Partnership (collectively "Verizon

Wireless"), joined by defendant Phoneco, L,P., and the Motion To Dismiss TAC for lack of subject matter jurisdiction and for failure to state a claim filed by defendants T-Mobile USA, Inc., Cingular Wireless, and Cricket Communications, Inc. (collectively "T-Mobile").[1]  NCC filed an Opposition, and each set of moving parties filed a Reply.  Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument.  For the reasons discussed below, the Motions are **GRANTED**.

## I.      BACKGROUND

### A.      Factual Background

As summarized in the Order dismissing NCC's FAC with leave to amend:  "This case concerns the ability of LECs to obtain compensation from CMRS providers for indirectly routed calls in the absence of a negotiated agreement as contemplated by 47 C.F.R. § 20.11."  Dkt No. 124, 2:13-25.  NCC describes itself as a CLEC providing switched and non-switched local exchange, exchange access, and other telecommunications services to end users in California.  TAC ¶ 3.  As a CLEC common carrier, NCC has a duty "to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers. . . ."  47 U.S.C. § 251(a)(1); *see* 47 C.F.R. § 20.11(b)[2] (even without negotiated reciprocal compensation arrangements for the transport and termination of telecommunications, the rules require CMRS (wireless) providers be given the opportunity to interconnect with LECs like NCC).  The named defendants are providers offering their customers calling plans into areas NCC services.  NCC terminates calls from defendants' customers to its end users and incurs associated costs.  TAC ¶¶ 4-7.

---

[1]   In their April 10, 2007 Motion, these defendants noted Cricket was named in the First Amended Complaint, but not in the caption or the body of the Third Amended complaint, and request dismissal of Cricket from the case.  Dkt No. 144 p. 1 n.2.  However, by Joint Motion filed May 18, 2007, the parties stipulated "Leap Wireless Intl., Inc. dba Cricket Comm., Inc." should be added as a named defendant, and the court so ordered on May 22, 2007.  Dkt Nos. 151, 152.

[2]   47 C.F.R. § 20.11(b)(2) provides:  "A commercial mobile radio service provider shall pay reasonable compensation to a local exchange carrier in connection with terminating traffic that originates on the facilities of the commercial mobile radio service provider."  Following the T-Mobile Decision, that rule was amended to add § 20.11(d):  "Local exchange carriers may not impose compensation obligations for traffic not subject to access charges upon commercial mobile radio service providers pursuant to tariffs."  The obligations under § 20.11 may be enforced by filing a complaint with the FCC under section 208 of the Act.  47 C.F.R. § 20.11(a).

The NCC alleges it sent monthly bills to the defendants for its traffic termination costs beginning in January 2003 at rates consistent with its state termination tariff rates, but defendants have refused to pay the charges.  NCC contends it must be permitted to recover its costs for the transport and termination of local telecommunication traffic originating from other parties' networks.  TAC ¶¶ 9-12; *see* 47 C.F.R. § 20.11(b)(2) ("A commercial mobile radio service provider shall pay reasonable compensation to a local exchange carrier in connection with terminating traffic that originates on the facilities of the commercial mobile radio service provider").  NCC alleges defendants refuse to pay the billed charges, refuse to pay NCC reasonable reciprocal compensation, and have not entered interconnection agreements or reciprocal compensation arrangements for routing communications traffic through NCC's system.  TAC ¶¶ 11-13, 16.

NCC pursues this action based on its interpretation of the February 24, 2005 decision in T-Mobile USA, Inc. Petition For Declaratory Ruling:  Lawfulness of Incumbent Local Exchange Carrier Wireless Termination Tariffs, FCC Docket Nos. 01-92, 95-185, 96-98 ("T-Mobile Decision"), the April 29, 2005 effective date of amendments to 47 C.F.R. § 20.11 promulgated by the T-Mobile Decision, and NCC's contention it can and must turn to this court for relief from "the Defendants' unjust and unreasonable practices," in consideration of "the FCC"s unwillingness to entertain 'collection actions' such as this, the impropriety of Plaintiff blocking incoming calls from carriers who refuse to pay for services they have utilized, and the Defendants' continuing practice of sending traffic which places an undue burden on Plaintiff's system and refusing to pay for this traffic."  TAC ¶ 25.  However, as argued by the moving defendants, and as the Order dismissing the FAC indicates, the FCC's T-Mobile Decision "did not address whether or how ILECs could pursue claims for enforcement of tariffs in place before April 28, 2005, or even *if* ILECs could pursue such claims."  Dkt No. 144, 6:16-18.

In addition to disputing whether CLEC's can obtain compensation from CMRS providers for indirectly routed calls in the absence of a negotiated agreement, the Motions assert a jurisdictional bar to this court's power to adjudicate the dispute, contending the TAC

1    has not demonstrated federal subject matter jurisdiction.  The court decides the Motions on

2    the jurisdictional issue.

3        **B.    Procedural Background**

4        As pertinent here, NCC's First Amended Complaint ("FAC") named approximately 82

5    defendants and presented three causes of action:  an Enforcement of Tariff claim under the

6    Communications Act of 1934, 47 U.S.C. §§ 206, 207; a Declaratory Relief claim under the

7    Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a); and a quantum meruit claim

8    pursuant to the California Public Utilities Code § 737 and California common law.  Chief

9    Judge Irma E. Gonzalez, to whom this case was then assigned, entered a February 16, 2007

10   Order granting defendants' Motion To Dismiss First Amended Complaint for failure to state

11   a claim and for failure to allege a cognizable legal theory in support of the court's exercise

12   of jurisdiction, with leave to amend.  Judge Gonzalez rejected NCC's argument the T-Mobile

13   Decision established its right to pursue compensation by way of tariff, as well as its argument

14   defendants' practice of refusing to pay compensation is an "unjust or unreasonable" practice

15   made unlawful pursuant to 47 U.S.C. § 201(b) authorizing NCC to seek damages pursuant

16   to 27 U.S.C. § 206.  In opposition to dismissal, NCC had alternatively argued it could amend

17   its complaint to state a claim under 47 U.S.C. § 251(b)(5).  Although the court expressed

18   reservations about NCC's ability to do so, the court granted NCC leave to amend, relying on

19   its insistence its claims arise under federal law, in particular provisions of the Federal

20   Communications Act and regulations as well as the Declaratory Judgment Act, even though

21   the FAC had failed to allege a legally cognizable federal claim.  Dkt No. 124 p. 12.

22       The undersigned District Judge received the reassignment of this case following

23   Judge Gonzalez's recusal on March 7, 2007.  NCC filed its Second Amended Complaint on

24   March 19, 2007, continuing to name a host of entity defendants, a number of whom the

25   docket reflected NCC previously had voluntarily dismissed.  This court ordered NCC to

26   "serve and file a superseding Third Amended Complaint to conform the parties and

27   allegations to the claims and defendants plaintiff will actually be pursuing in the current

28   posture of this litigation."  Dkt No. 135.  NCC filed its TAC on March 21, 2007, asserting the

same three causes of action as in its First Amended Complaint, but in a different order. The named defendants continue to number in the dozens. The same two groups of defendants (*i.e.*, the two Verizon Wireless defendants and the three T-Mobile defendants) who had successfully moved to dismiss the FAC move separately again to dismiss the TAC for failure to state a claim and for lack of federal subject matter jurisdiction.

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Rule 12(b)(1)

A federal court cannot reach the merits of any dispute until it confirms its own power to adjudicate the case. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-95 (1998). An affirmative defense that the court lacks subject matter jurisdiction may be raised by a motion to dismiss. Rule 12(b)(1). A Rule 12(b)(1) Motion challenges the court's power to hear the case. Morongo Band of Mission Indians v. California State Bd. Of Equalization, 858 F.2d 1376, 1380-81 (9th Cir. 1988). A facial attack on subject matter jurisdiction relies on the allegations in the complaint, documents attached to the complaint, judicially noticed facts, and any undisputed facts evidenced in the record. If it appears from the face of the complaint federal jurisdiction is lacking, dismissal is proper on a Rule 12(b)(1) motion. *See* Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). The plaintiff has the burden to demonstrate jurisdiction exists in order for a complaint to survive a 12(b)(1) challenge. Tosco Corp. v. Communities For A Better Environment, 236 F.3d 495, 499 (9th Cir. 2001) ("A plaintiff suing in federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendments"),*quoting* Smith v. McCullough, 270 U.S. 456 (1926) *and citing* Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989); Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) (the burden to establish the existence of federal subject matter jurisdiction lies with the party invoking it).

06CV1542

1       The complaint allegations control whether a suit "arises under" federal law for

2   purposes of 28 U.S.C. Section 1331.  "Where the complaint . . . seeks recovery directly

3   under the Constitution or laws of the United States, the federal court . . . must entertain the

4   suit."  U.S. v. Morros, 268 F.3d 695, 699-700 (9th Cir. 2001).  "After construing the

5   allegations in the light most favorable to the plaintiff, a complaint will be dismissed for lack

6   of subject matter jurisdiction if:  (1) the claim does not 'arise under' federal law or the

7   Constitution; (2) there is no case or controversy; or (3) the cause of action is not described

8   in any jurisdictional statute."  Doe v. Schachter, 804 F. Supp. 53, 57 (N.D.Cal 1992), *citing*

9   Baker v. Carr, 369 U.S. 186, 198 (1962).

10                  **2.**   **Rule 12(b)(6)**

11       A Rule12(b)(6) motion tests the sufficiency of the complaint.  Navarro v. Block, 250

12   F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted where the complaint lacks a

13   cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc.,749 F.2d 530, 534 (9th Cir.

14   1984); *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court

15   to dismiss a claim on the basis of a dispositive issue of law").  Alternatively, a complaint may

16   be dismissed where it presents a cognizable legal theory yet fails to plead essential facts

17   under that theory.  Robertson, 749 F.2d at 534; *see* Balistreri v. Pacifica Police Dept., 901

18   F.2d 696, 699 (9th Cir. 1988).

19                  **3.**   **Declaratory Judgment Act**

20       The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides no independent basis

21   to confer federal subject matter jurisdiction.  *See* Nationwide Mut. Ins. Co. v. Liberatore, 408

22   F.3d 1158, 1161-62 (9th Cir. 2005).  Accordingly, a plaintiff invoking federal jurisdiction must

23   plead some other affirmative claim arising under federal law as an independent basis to vest

24   jurisdiction in the district court to adjudicate the matter.  Id.  Moreover, unless the requested

25   declaratory relief would aid in clarifying and settling the parties' legal relations and terminate

26   the proceedings between them with relief from uncertainty and ambiguity, it should be

27

28

06CV1542

1   denied.[3]  *See, e.g.*, <u>Greater Los Angeles Council on Deafness, Inc. v. Zolin</u>, 812 F,2d 1103

2   (9th Cir. 1987).  The court exercises its discretion in deciding whether to entertain or grant

3   a request for declaratory judgment.  <u>Id.</u>

### 4. The <u>T-Mobile</u> Decision

5        In the <u>T-Mobile Decision</u>, decided April 28, 2005, CMRS providers jointly filed a

6   petition for a declaratory ruling asking the FCC to reaffirm "that wireless termination tariffs

7   are not a proper mechanism for establishing reciprocal compensation arrangements for the

8   transport and termination of traffic," arguing, among other things, the tariffs were unlawful

9   because they bypassed codified negotiation and arbitration procedures.  <u>T-Mobile Decision</u>

10  ¶ 1.  The FCC found "the existing rules do not explicitly preclude tariffed compensation

11  arrangements" and therefore "incumbent LECs were not prohibited from filing state

12  termination tariffs and CMRS providers were obliged to accept the terms of applicable state

13  tariffs."[4]  <u>T-Mobile Decision</u> ¶ 9.

14       However, the FCC further found "neither the Commission's reciprocal compensation

15  rules, nor the § 20.11 mutual compensation rules adopted prior to the 1996 Act, specify the

16  types of arrangements that trigger a compensation obligation."  <u>T-Mobile Decision</u> ¶ 9.  As

17  summarized in Judge Gonzalez's Order:  "Although the Commission found the prior use of

18  termination tariffs permissible, it amended § 20.11 prospectively 'to prohibit LECs from

19  imposing compensation for obligations for non-access traffic pursuant to tariff,' . . . [and] to

20  clarify that an incumbent LEC may request interconnection from a CMRS provider and

21

22       [3]   As the T-Mobile defendants note, NCC's own pleading acknowledges neither of those
objectives would be achieved by a declaratory judgment from this court, because the appropriate

23  regulatory body would still have to determine the precise rate of compensation for termination of
traffic, among other things.  *See* Dkt No. 144 15:26-16:16, TAC ¶ 30.

24

25       [4]   "Incumbent" LECs are defined by statute: "(1)  Definition.  For purposes of this section,
the term "incumbent local exchange carrier" means, with respect to an area, the local exchange

26  carrier that -- (A) on February 8, 1996, provided telephone exchange service in such area; and (B)(i)
on February 8, 1996, was deemed to be a member of the exchange carrier association pursuant to

27  section 659.601(b) of the Commission's regulations (47 C.F.R. 69.601(b)); or (ii) is a person or entity
that, on or after February 8, 1996, became a successor or assign of a member described in clause

28  (i)." 47 U.S.C. § 251(h). That section also contains a provision describing in what circumstances the
Commission "may, by rule" provide for the treatment of an LEC as an incumbent local exchange
carrier,  47 U.S.C. § 251(h)(2).

invoke the negotiation and arbitration procedures set forth in § 252 of the Act."  Dkt No. 124 6:26-7:5, *quoting* T-Mobile Decision ¶ 16.

### 5.   Law Of The Case Doctrine

Under the law of the case doctrine, courts follow prior decisions in subsequent proceedings in the same case.  *See* Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir.1989); *see also* United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case' "), *quoting* Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993).  A prior Order issued in the same case triggers the law of the case doctrine. "The doctrine of law of the case encompasses a court's explicit decisions as well as those issues decided by necessary implications."  Alexander, 106 F.3d at 876 (quotation marks and citation omitted).  The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion.  *See* Arizona v. California, 460 U.S. 605, 618 (1983).

> Although the observance of the doctrine is considered discretionary, this court has ruled that the prior decision should be followed unless:  (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

In re Rainbow Magazine, Inc., 77 F.3d 278, 281-82 (9th Cir. 1996), *quoting* Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir.1995).

This court finds none of the circumstances here warrant deviation from law of the case doctrine.  The court addresses the instant Motions in consideration of the findings and rulings associated with Judge Gonzalez's dismissal of the FAC.  Unless the TAC cures the FAC defects Judge Gonzalez identified, the result must be the same.

### B.   Motions Merits

### 1.   NCC Has Not Established Federal Subject Matter Jurisdiction

NCC contends this court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 "because the Plaintiff's claims arise under federal law," and the "claims

involve[] substantial questions of federal law which implicate broad federal interests which cannot be resolved without reference to the Federal Communications Act of 1934 and the Telecommunications Act of 1996." TAC ¶ 26.  "In particular, relief is sought by way of 28 U.S.C. § 2201 and 2202, 47 U.S.C. §[§] 201, 202, 206, 207, 251, and 401,[5] as well as involving the application of various orders and regulations issued by the Federal Communications Commission." TAC ¶ 26.

Only the TAC's First Cause of Action for declaratory relief purports to rely on federal law, seeking a judicial determination whether NCC is entitled to compensation for terminating calls sent to its end users by Defendants' customers after the date of the T-Mobile Decision. Applying law of the case doctrine to the claim as rearticulated after dismissal of the FAC, this court considers the following principles and prior findings in deciding the Motions:

a.      "The DJA [Declaratory Judgment Act, 28 U.S.C. § 2201(a)] provides relief only where there is 'an affirmative claim arising under federal law in order to vest the district court with jurisdiction." Dkt No. 124 10:24-26, *quoting* California v. Oroville-Wyandotte Irrigation Dist., 409 F.2d 532, 535 (9th Cir.1969).  "[N]either 47 U.S.C. § 206, nor 47 U.S.C. § 201, provides a private cause of action for violation of a regulation." Dkt No. 124 11:1-3.

b.      Unless NCC cites a "federal statute as an underlying basis for the Court's jurisdiction," the DJA offers no independent basis for the exercise of federal jurisdiction.  Dkt No. 124 10:20-24 (noting NCC had conceded the FAC cited no federal statute as required to provide an underlying basis for this court's jurisdiction).

c.      Unless NCC "identifie[s] an independent basis for federal court jurisdiction over its claim for compensation for termination of calls by Defendants' customers," its cause of action under the Declaratory Judgment Act must be dismissed for lack of jurisdiction.  Dkt No. 124, 11:4-7, *citing* Libertore, 408 F.3d at 1161.

\\

---

[5]   The court finds NCC's reliance on 47 U.S.C. § 401 to be unelaborated and misplaced as a basis for this court's exercise of jurisdiction. As Defendants observe, 47 U.S.C. § 401, by its express terms, is limited to parties seeking injunctive relief to enforce an FCC order.  Through its TAC, NCC seeks only compensatory damages, declaratory relief, fees, and costs.  Section 401 provides no mechanism for obtaining either a judicial declaration or damages.

1      d.      The provisions of 47 U.S.C. §§ 206-207 do not provide an independent basis

2   for a private right of action, *unless* some *other* statutory provision within the same chapter

3   has been violated. Dkt no. 124, pp. 8, 11, *citing* <u>Greene v. Sprint Communications Co.</u>, 340

4   F.3d 1047, 1048-49 (9th Cir. 2003).

5      e.      The provisions of 47 U.S.C. § 201(b) do not provide an independent basis for

6   a private right of action on the premise regulatory violations necessarily give rise to claims

7   thereunder.  Only in narrow circumstances, previously found to be not present in this case,

8   will the violation of an FCC regulation support a private right of action for damages

9   thereunder, such as when the FCC has expressly determined in its implementing order a

10  particular rules violation constitutes a Section 201(b) violation enforceable through a private

11  court action.  Dkt No. 124, pp. 8-9; *see* <u>Metrophones Telecommunications, inc. v. Global</u>

12  <u>Crossing Telecommunications, Inc.</u>, 423 F.3d 1056, 1064-70 (9th Cir. 2005).

13      Referring to the "red-lined" comparison of the FAC to the TAC,[6] the court observes

14  the Declaratory Relief cause of action in the FAC asked the court to determine:

15          (1) the number of calls and the number of minutes originating on
            the Defendants' networks and terminated on the Plaintiffs
16          network from April [2]9, 2005 up through the time of trial; (2) that
            the Plaintiff is entitled to receive mutual compensation for the
17          termination of calls to Plaintiffs end-users which originate on the
            Defendants' networks, and (3) that the defendants are required
18          to commit to compensate Plaintiff at a rate to be determined by
            the appropriate regulatory body, or else refrain from sending any
19          traffic to Plaintiff's end-users and refrain from taxing Plaintiffs
            limited resources.
20
    Dkt No. 144-4, p. 9.
21
22      The TAC restatement of the Declaratory Relief claim merely adds the assertion:

23  "(4) that the Defendants' conduct amounts to an unjust and unreasonable practice in

    violation of **sections 201 and 202** of the Federal Communications Act (47 U.S.C. § 201,
24
    202) which has damaged the Plaintiff (47 U.S.C. §§ 206, 207)." Dkt No. 144-4, p. 10.
25
26      Judge Gonzalez rejected NCC's argument the <u>T-Mobile Decision</u> established its right

27  to pursue compensation by way of tariff as well as its argument defendants' practice of

28          [6]   The red-lined comparison of the FAC pleading and the TAC pleading is provided as Dkt
            No. 144-4, T-Mobile's Amended Motion To Dismiss, without objection from NCC.

1    refusing to pay compensation is an "unjust or unreasonable" practice made unlawful

2    pursuant to 47 U.S.C. § 201(b) authorizing NCC to seek damages in federal court pursuant

3    to 27 U.S.C. § 206.  She granted leave to amend based on NCC's representation it could

4    amend its Complaint to state a Declaratory Relief claim **under 47 U.S.C. § 251(b)(5)**, a

5    contention she found dubious.[7]  That is not what NCC has attempted to do in the one federal

6    TAC cause of action, continuing instead to rely on 47 U.S.C. §§ 201, 202.  The TAC does

7    no more than string cite the statutory provisions in its Jurisdictional Statement And Venue

8    section, summarily contending the court purportedly has subject matter jurisdiction over this

9    action under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law:  "In

10   particular, relief is sought by way of 28 U.S.C. §§ 2201 and 2202, 47 U.S.C. §[§] 201, 202,

11   206, 207, 251, and 401." The TAC does not actually plead an expanded claim under 47

12   U.S.C. § 251.  TAC ¶ 26; Dkt No. 144-4 pp. 8-9.

13          On the issue of "reciprocal compensation," 47 U.S.C. § 251 establishes no right to sue

14   in federal court for such recoveries, but rather imposes a duty on the carriers as among

15   themselves "*to establish* reciprocal compensation arrangements for the transport and

16   termination of telecommunications."  47 U.S.C. § 251(b)(5) (emphasis added). Those

17   arrangements, if breached, may give rise to standing to sue, but in the *absence* of any such

18   arrangement, NCC has not convinced the court it can exercise original jurisdiction over

19   NCC's TAC claims.  The TAC Prayer for relief continues to cite only 47 U.S.C. §§ 201, 202

20   as the basis for its allegation "the Defendants' conduct amounts to an unjust and

21   unreasonable practice" in violation of those provisions of the Federal Communications Act

22   and a damages statement Judge Gonzalez has already ruled do not support federal

23   _____

24       [7]   Judge Gonzalez was skeptical of the NCC's ability to state such a claim. She opined any attempt to amend the complaint to add a claim under 47 U.S.C. § 251(b)(5), based upon the state tariff, would be "futile" because "Section 251(b)(5) does not establish a right to compensation for the

25   termination of traffic" but rather "requires LECs to enter into arrangements for reciprocal compensation."  Dkt No. 124 9:16-10:1, *citing* 47 U.S.C. § 153(26); Implementation of the Local

26   Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98, 11 FCCR 15499, FCC 96-325, First Report and Order ("Local Competition First") ¶ 1004. "Under the Act and

27   its regulations, CMRS providers are not LECs and do not have the same obligations imposed upon LECs," and "there is nothing in the Act, the regulations, or the Commissioner's reports indicating an

28   intent by Congress or the FCC to allow LECs to enforce a duty of reciprocal compensation against CMRS providers pursuant to § 251(b)(5)."  Dkt No. 124 10:1-7.

1  jurisdiction over this action.   The NCC has not identified authority conferring federal

2  jurisdiction over this dispute.  This is not a case where NCC is suing for breach of the duty

3  imposed by 47 U.S.C. § 251(b)(5) *to establish* a reciprocal compensation arrangement

4  (irrespective of whether such a claim would even be cognizable here), but rather NCC sues

5  for damages and a declaration of "rights and responsibilities" it appears to this court have

6  not been rendered sufficiently concrete to afford meaningful declaratory relief.

7          NCC's two other TAC claims arise solely under state law.   The Second Cause of

8  Action seeks a quantum meruit recovery of the reasonable value of the services NCC

9  provided as a benefit to Defendants by terminating calls originating on their networks for the

10 period April 29, 2005 through the time of trial.   Judge Gonzalez previously adjudged the

11 quantum meruit compensation for termination of traffic from the date of the <u>T-Mobile</u>

12 <u>Decision</u> forward to be based solely on state law,[8] but with leave to amend to attempt to

13 reallege the quantum meruit claim under 47 U.S.C. § 201(b).  Dkt No. 124, 11:14.  She

14 determined the Ninth Circuit has held neither 47 U.S.C. § 206 nor 47 U.S.C. § 201 provides

15 a private cause of action for violation of a regulation.  Dkt No. 124, 11:1-3.  Comparing the

16 FAC and the TAC, the court finds the NCC has not successfully restated its quantum meruit

17 claim as one arising under federal law, and it remains a state law issue.

18         The Third Cause of Action seeks enforcement of a California tariff as the alleged

19 recovery measure for the period beginning three years before the filing of the Complaint in

20 this action and continuing up to and including April 28, 2005.  TAC ¶ 41.  Applying the law

21 of the case, in order to find the TAC pleading has cured the defects Judge Gonzalez

22 identified, NCC would have to have incorporated some other provision of federal law

23 permitting it to enforce the state tariff in federal court, as 47 C.F.R. § 20.11(b)(2) does not

24

25         [8] The <u>T-Mobile Decision</u> ended any uncertainty regarding whether compensation obligations
26 could exist between CMRS providers and incumbent LECs that had not entered agreements
   establishing such obligations by ruling, from the February 2005 date of that decision forward,
27 compensation obligations can be established only by agreement. <u>T-Mobile Decision</u>, ¶¶ 14, 16. That
   decision also expressly adopted a new rules under 47 C.F.R. § 20.11(d) (providing LECs "may not
28 impose compensation obligations for traffic . . . pursuant to tariffs") and (e) (providing for the
   invocation of the negotiation and arbitration procedures contained in section 252 of the Act in
   circumstances where an incumbent LEC requests interconnection from a CMRS provider).

1   identify a mechanism for entities like NCC to obtain compensation, and 47 U.S.C. §§ 206,

2   207 do not support a claim for enforcement of a state tariff.  The court relies on the following

3   principles and prior findings to conclude NCC has not cured its pleading defects:

4          a.      In its T-Mobile Decision, the FCC explicitly disallowed prospectively the practice

5   of LEC's seeking compensation from CMRS providers pursuant to tariff, so that NCC's

6   causes of action for compensation for any period after the T-Mobile Decision must rely on

7   the Declaratory Judgment Act and common law quantum meruit.  Dkt No. 124 3:22-25.

8          b.      "Even assuming the T-Mobile Decision authorized Plaintiff to file its state

9   wireless termination tariff, Plaintiff's FAC cites no statute or other provisions of federal law

10  permitting Plaintiff to file an action in federal court to enforce the state tariff," and NCC's

11  opposition to the motions to dismiss the FAC "implicitly concede[d] the T-Mobile Decision

12  does not independently permit an action for enforcement of the state tariff to be brought in

13  federal court."  Dkt No. 124 7:7-11.

14         c.      NCC's asserted 47 U.S.C. § 206 statutory basis for its contention defendants'

15  failure to compensate it for the termination of traffic is an "unlawful practice" for which it may

16  recover damages in this court cannot be based "solely upon the T-Mobile Decision or the

17  regulations" because the Ninth Circuit has held "sections 206 and 207 authorize a private

18  cause of action in federal court *only* for violation of some provision of the statutes contained

19  within that chapter, and not for any violation of FCC's regulations."  Dkt No. 124 7:18-8:7,

20  *citing* Greene v. Sprint Communications Co., 340 F.3d 1047, 1048-49 (9th Cir. 2003).

21         d.      The tariff NCC attempts to enforce in this case "is a purely state tariff," not one

22  set and filed with the FCC.  A cause of action directly under sections 206 and 207 is not

23  authorized because those provisions apply only to enforcement of an existing FCC-approved

24  tariff.  Dkt No. 124 8:8-13.

25         e.      In amending its complaint, Judge Gonzalez informed the NCC it had to point

26  to something other than its own argument that the failure of CMRS providers to pay

27  compensation as provided for in 47 C.F.R. § 20.11(b) is an "unjust and unreasonable"

28  practice within the meaning of § 201(b) of the Act, the T-Mobile Decision and its state tariff

1 | are not a sufficient basis to state a cause of action under § 201(b) because "the Ninth Circuit
2 | in Metrophones rejected the Commissioner's argument that the violation of a regulation
3 | automatically created a private cause of action."[9]  Dkt No. 124 9:7-15.

4 |       f.      NCC's tariff cause of action "point[s] to nothing in the Communications Act
5 | entitling it to collect compensation in federal court based upon those [state wireless
6 | termination tariffs] according to the allegations in the FAC," causing a failure to state a
7 | cognizable legal theory arising under federal law on that basis.  Dkt No. 124 10:8-12.

8 |       The court finds the differences between the pleading of the causes of action in the
9 | FAC and in the TAC fail to cure the defects identified by Judge Gonzalez, depriving this court
10 | of subject matter jurisdiction over this dispute.  NCC has not demonstrated any claim "arises
11 | under" the laws or Constitution of the United States, and law of the case principles dictate
12 | dismissal is warranted.  The court further finds on the facts and in the circumstances of this
13 | case declaratory judgment of the kind the NCC requests would not achieve the objectives
14 | of granting such relief.  See Zolin, 812 F.2d 103.

15 |             **2.**      **Other Issues Raised**

16 |       The court declines to address issues associated with proper parties to this dispute,
17 | including requests to dismiss unserved defendants, because the case does not survive the
18 | jurisdictional grounds for dismissal.  Similarly, the court does not reach Verizon Wireless'
19 | preemption argument with respect to NCC's quantum meruit theory.[10]

20 | \\
21 | \\
22 |

23 |     [9]   "The plaintiff in Metrophones alleged the providers' failure to compensate payphone providers for dial-around calls violated 47 C.F.R. § 60.1300, which provides '. . . a Completing carrier that completes a coinless access code or subscriber toll-free payphone call from a switch that the Competing carrier either owns or leases shall compensate the payphone service provider for that call at a rate agreed upon by contract.' The language of § 60.1300 is similar to the language of 47 C.F.R. § 20.11, which establishes LECs and CMRS providers' duty to enter into mutual compensation agreements."  Dkt No. 124 p. 9 n.6.

27 |     [10]   Judge Gonzalez expressly declined to reach Verizon's arguments NCC's claim for compensation by way of state tariff is preempted by Federal law and that NCC's tariff does not apply to CMRS providers on grounds she found NCC failed to state a cognizable federal claim. "If Plaintiff can amend its complaint to state a claim, Movants can renew their arguments at that time." Dkt No. 124 10:14-18.

1    **III.    CONCLUSION AND ORDER**

2          For all the foregoing reasons, **IT IS HEREBY ORDERED** the Motions are **<u>GRANTED</u>**

3    and the case is dismissed in its entirety.

4          **IT IS SO ORDERED**.

5    DATED:  November 26, 2007

6

7          **HONORABLE LARRY ALAN BURNS**
      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06CV1542